## BLOODGOOD *vs* CAMMACK.

1. The statutes of 1828 and 1829, defining the liability of indor-
sers, act upon the *nature* of contracts, and not merely upon
the *remedy* for enforcing them; and so do not embrace the
case of a note, *assigned* prior to their passage.
2. An averment in a declaration by the indorsee of a note, (as-
signed prior to the passage of the acts of *1828 and 1829*,)
against the indorsee, of demand and notice—held sufficient.

This was an action of trespass on the case, in as-
sumpsit by Bloodgood against Cammack, in Perry
Circuit Court. The cause of action was a promis-
sory note, executed by Samuel Cammack, on the
nineteenth day of May, one thousand eight hundred
and twenty-seven; and payable on the first day of
January, thereafter, to the defendant, and indorsed
by him to the plaintiff.

The declaration averred the indorsement; a, pre-
sentment at the Bank of Mobile; that the maker
could not be found; and notice to the indorser.—
And the defendant plead non-assumpsit, fraud, want
of consideration, payment, set-off, and accord and
satisfaction; and a verdict and judgment were ren-
dered for the defendant. On bill of exceptions, a
writ of error was taken by the plaintiff; and these
were the facts—

The plaintiff, on the trial below, offered in evi-
dence a note, in the words following, to wit—.

"*Cahawba, Old Town*, May 19, 1827.
"Dolls. 1104 $\frac{14}{100}$

"On the first day of January next, I promise

to pay Michael Cammack, Esq., or order, eleven hundred and four dollars and fourteen cents for value received, payable in the city of Mobile.

" SAMUEL CAMMACK.

(Indorsed,) " Michael Cammack."

He also produced as testimony, a regular protest by a notary public, against said note, for non-payment, dated, on the fourth of January, one thousand eight hundred and twenty-eight; and evidence of notice to the defendant; but adduced no proof of a previous suit against the maker of the note.

Under this testimony, the Court below charged the jury to find for the defendant; which was accordingly done.

*Goldthwaite*, for plaintiff in error.
*Stewart*, contra.

THORNTON, J.—This was an action of trespass on the case, brought by the plaintiff in error, against the defendant, as indorser of a promissory note; which appears, from a bill of exceptions, taken in the progress of the cause, to have been executed on the nineteenth day of May, one thousand eight hundred and twenty-seven, by Samuel Cammack, to the defendant, for the sum of one thousand one hundred and four dollars and fourteen cents, payable on the first day of January next after date, and assigned to the plaintiff previous to its maturity.

The only error assigned, questions the propriety of a charge given by the Court to the jury, on the trial below, which was, in substance, that the plain-

tiff, to entitle himself to a recovery against the defendant, should have proven that he had first prosecuted suit against the maker of the note: and that, in the absence of such proof, the defendant was entitled to a verdict. The declaration contains no averment of any such fact; but, in deducing the liability of the defendant, avers an assignment of the note, legal demand of the maker, and due notice to the defendant, of his refusal to pay it.

The point agitated for the first time, by a motion for instructions to the jury, it seems to me, would have been more professionally availed, by craving oyer, under our rules of practice, of the note and assignment, and demurring to the declaration, as not containing an averment of performance on the part of the plaintiff, of that which was supposed to constitute a necessary condition precedent, to fix the liability of the defendant. If his liability, as indorser, could only accrue upon the prosecution of the maker to insolvency, by legal proceedings, instituted against him, to the first Court at which he could have been sued, after the said assignment—then, according to the correct principles of pleading, the fact of such prosecution should have been averred in the declaration.

If, however, according to the law applicable to this contract of assignment, by virtue of which the defendant is sought to be charged, it was not necessary to have pursued the maker to insolvency; but only to have made the demand, and notified the defendant of his failure to pay—then the declaration is substantially good.

Upon the latter hypothesis, that is, that no such suit was necessary, it would seem to be the duty of this Court, to reverse the judgment, and remand the cause, for a trial, *de novo*, upon the issues joined between the parties.

The legality of the charge excepted to, depends upon the question, whether or not, the contract of assignment, upon which this action was instituted, is embraced by, or subjected to the operation of two acts of our legislature—the one passed on the fifteenth of January, one thousand eight hundred and twenty-eight, entitled " an act, defining the liability of indorsers, and for other purposes;" and the other passed on the thirtieth of January, one thousand eight hundred and twenty-nine, entitled " an act to repeal in part, and amend an act, entitled 'an act, defining the liability of indorsers, and for other purposes;'" both of which were enacted subsequently to the making and indorsement of this note.

In entering upon the consideration of this question, I will premise, that there is, in the very nature of things, a distinction between a contract, and the mode which may be provided for its enforcement.— Nor can it be doubted, that it is, at all times, competent, so to mould and fashion that mode, as seems most expedient to the mind of the legislature. The right, and the remedy, through the medium of of which its enjoyment may be obtained, are as certainly separated, by a line of partition, as light is separated from darkness; and yet, to describe it with accuracy, is often as difficult, as to designate the precise minute of time, when day-light commences and the night is gone by.

Hence, in this case, it is contended, on the part of the defendant, that those acts of the legislature, are of that class which affect the remedy alone; and may well embrace the subject in controversy: whilst, on the other hand, such a construction is resisted, as impugning an elementary principle of justice, guarantied to the citizen, by the paramount law of the land.

That part of the constitution, which is here invoked, is in the following words—" No *ex post facto* law, nor law impairing the obligation of contracts, shall be made." I consider the terms, *"ex post facto,"* as relating exclusively to laws of a punitive character; which kind of laws can never have a retrospective aspect: whilst retrospective laws, not punitive in their nature, may constitutionally be enacted, provided they do not impair the obligation of contracts. The constitution of the United States contains this provision verbatim with our own; and the distinction above suggested, between *ex post facto* laws, and such as impair the obligation of contracts, was taken by the Supreme Federal tribunal, at an early period of its judicial history; and has ever since been adhered to.

The force of argument, by which it is maintained, and the desire to preserve uniformity of decision, determine us in its adoption.

Hence, I conclude, that the retrospective operation of a statute or otherwise, touching the *civil* rights of the citizen, is not an infallible test of its constitutional validity; but, the question, in that regard, is, does it impair the obligation of contracts? In the

BLOODGOOD *vs* CAMMACK.

application of this test, many laws, clearly retrospective in their character have been sustained.—As, for example, the act, giving a summary remedy for the collection of debts, unknown to the common law, called the petition and summons law.[a]   So, on the other hand, many have been annulled, by the judiciary, because of their infringement upon the obligation of contracts—as the bankrupt laws of New York.[b]

[a] 1 Bibb, 567

[b] 3 Wash. C. C. R. 319.

Chancellor *Kent*, in his opinion, delivered in the case of *Dash* vs *Vankleeck*,[c] has imparted both light and order, to the dark and confused mass of adjudication upon this subject.

[c] 7 Johns. 502.

I infer, from all the authorities thus collated, that retrospective legislation, in reference to the essence, nature, construction or extent of a contract, is, on all hands, eschewed, as oppressive and unjust; being condemned in principle, even where its exercise is not inhibited, as with us, by a power paramount to the legislative department of the government. Objections to it pour in upon us, from every source whence we may derive either pleasure or profit in tracing the principles of jurisprudence; the maxims of civil law condemn it; it is abhorrent to the equitable principles of the common law, and our own constitution expressly interdicts it.

It is but fair and decorous, then, wherever we can do so, to presume that the law-giver intended only a prospective operation to such enactments as touch the subject matter of contracts, when otherwise, their obligation would be impaired.

The result of my examination into the provisions

5 s & p.        36

of these two acts of our legislature, notwithstanding the equivocal verbage in which they are couched, is, that they do act upon the very essence and nature of the contract, and not merely upon the remedy for enforcing it : but I also conclude, that they are prospective in their action; not embracing the case of assignments like this, made prior to its passage.

Let us consider what was the contract by which the defendant in this case, was bound, or what was its obligation? The contract implied by law, between the assignor and the assignee, at the time it was entered into, was, that if the assignee, on the last day of grace, should demand payment of the maker, and in case of his default, should give due notice to the defendant, then he would pay it to the plaintiff. There can be no difference in the nature of this contract, whether it be thus implied by law, or written out, in extenso, and signed by the party. Now, are not the terms of this contract, totally variant from the one which this subsequent legislation would substitute between the parties. The condition of demand and notice are taken out of the contract, and that of suit to insolvency interpolated by the law, which surely impairs its obligation, in the sense of the constitution : for, what else is the obligation of a contract, but to do, or not to do a certain thing; and this may be absolute, as the promise of the maker of this note was; or, under some condition, annexed, as was the promise of the indorser.

Here the contract as made between the parties, by reference to the law, as it stood, is, to say the least of it, sought to be materially impaired, and a legislative contract introduced in its stead. If those

acts were so framed as to admit of none but such a retrospective construction, I would not hesitate to declare them unconstitutional, so far as contracts of assignment, made before their passage, were concerned.

It is the opinion of this Court, that the judgment below, be reversed, and the cause remanded for further proceedings.

SAFFOLD, J, not sitting.